## Y. M. WEE v. EMMA M. NAKUINA, ET AL.

## No. 1549.

### APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
### HON. F. ANDRADE, JUDGE.

ARGUED NOVEMBER 14, 1924.                    DECIDED DECEMBER 3, 1924.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

GUARDIAN AND WARD—*powers of guardian—payments of debts.*

> The guardian of a minor has authority to assent to the application of the proceeds of the sale of land of the ward's mother and ancestor to an existing indebtedness created by the ancestor.

EVIDENCE—*findings of fact.*

> Upon the evidence, the findings of fact made by the trial court in a suit for foreclosure of a mortgage are sustained.

### OPINION OF THE COURT BY PERRY, J.

This is a bill to foreclose a mortgage executed on May 30, 1896, and given to secure the joint and several promissory note of the same date in favor of Alexander Young for the sum of $8500 payable five years after date with interest at the rate of seven per cent. per annum. The makers of the note and the mortgage were Emma M. Nakuina, Moses K. Nakuina, F. W. K. Beckley, Fredericka W. K. Beckley and Sabina K. Hutchison. Moses Nakuina died August 3, 1911, leaving his co-promisor, Emma M. Nakuina, as his sole heir. Fredericka W. K. Beckley died August 24, 1911, leaving a husband, the respondent William F. Jones, and as her sole heirs the five minors who are respondents herein. The original payee assigned the note and the mortgage on August 1, 1902, to Sarah Sharp; the latter assigned the same securities to the trustees of Kaumakapili church on January 29, 1907; the trustees assigned to W. R. Castle on Sep-

tember 30, 1911, and the latter assigned to Y. M. Wee, the present complainant, January 14, 1919. The mortgage and the assignments were all promptly recorded. On October 12, 1911, Emma M. Nakuina, one of the respondents, was duly appointed guardian of the five minors, now respondents, and has ever since been and now is their duly appointed guardian. All of the foregoing facts are either expressly admitted or shown by undisputed evidence. They are not now disputed.

The complainant claims in his bill that the balance due upon the note and mortgage is $3000 principal and interest thereon at seven per cent. from March 4, 1918. The respondents in their answer plead payment as their sole defense.

There are fifty-three indorsements on the back of the note of payments on account of interest and one additional indorsement of a payment on account of principal, —some of the indorsements relating to interest being for payments for periods of three months, others being for payments for periods of six months, one other for a payment for one year and five others for other periods. These entries show that from the date of the note (May 30, 1896,) to August 1, 1902, interest was paid on $8500 at the rate of seven per cent. per annum; that from August 1, 1902, to January 24, 1907, interest was paid on $8500 at the rate of eight per cent. per annum; that from January 24, 1907, to March 4, 1912, interest was paid on $9000 at the rate of seven per cent. per annum; and that from March 4, 1912, to March 4, 1918, interest was paid on $3000 at the rate of seven per cent. per annum. Under date of March 4, 1912, on the back of the note, is an indorsement acknowledging the receipt of $6000 on account of principal, with the additional notation, "($500 note canceled and delivered)".

While the defense as pleaded is that of total payment

of the indebtedness evidenced by the note and secured by the mortgage, the only contentions now advanced on behalf of the respondents are, first, that interest on the principal of $8500 was improperly charged at the rate of eight per cent. per annum and should have been charged at the rate of seven per cent. only, second, that the principal upon which interest was payable did not at any time exceed $8500 and did not, after the payment of March 4, 1912, on account of principal, exceed $2500 and, third, that two items of interest credited under date of June 30, 1913, and amounting to $700 were in reality overpayments and should now be additionally credited in favor of the respondents.

The trial court found in favor of the complainant that an additional sum of $500 was loaned to the makers of the note January 24, 1907, that this $500 indebtedness was paid on March 4, 1912, and that an agreement was entered into between the holder of the note and mortgage and the makers thereof that from August 1, 1902, the interest rate should be increased to eight per cent.

The finding of the lower court concerning the increase of interest to eight per cent. was based upon inference adduced from the other facts proven. Since the trial below the complainant found and has introduced in evidence in this court an agreement in writing, dated August 1, 1902, and duly recorded, entered into by Sarah Sharp, then holder of the note and mortgage, and by all five of the original makers of the note and mortgage, whereby it was expressly agreed that the time for the payment of the note and the mortgage should be extended for three years from the first day of August, 1902, and that the interest rate should be increased to eight per cent. per annum. This new evidence shows beyond any doubt that the charges and payments of interest at the rate of eight per cent. were authorized and correct. Interest at

the rate of eight per cent. was by the agreement agreed to be paid not only for the extended term of three years but for the remainder of the life of the note and mortgage.

As to the addition of $500 to the principal, we sustain the finding of the trial court. Ten indorsements on the back of the note of payments of interest indicate that the principal had been increased from $8500 to $9000. Eleven other indorsements of payment of interest show that, after the receipt of $6000 on account of principal, the principal sum due was $3000 and not $2500. The notation also on the back of the note of March 4, 1912, expressly shows that there was a note for $500 as well as that, on that date, it was canceled and delivered to the makers. As testified by a witness who has served as cashier and bookkeeper for W. R. Castle continuously since August, 1909, on at least three distinct occasions an account was rendered to Emma M. Nakuina, one of the original makers, sole heir of another maker and guardian of the five heirs of still another deceased maker, and no objection was ever made by her to any item in the accounts, these accounts showing the payments and credits of interest and principal as they appeared on the back of the note. On at least one occasion Mrs. Nakuina expressed her acquiescence to this witness of the correctness of the entries and accounts. W. R. Castle, in purchasing the note and mortgage, paid to the trustees of the Kaumakapili church $9000 principal and not $8500. Y. M. Wee, the complainant, in purchasing these securities from W. R. Castle, paid $3000 principal and not $2500 principal. In a letter to A. L. Castle, son of W. R. Castle, dated June 18, 1919, Emma M. Nakuina referred to the mortgage in question as one of $3000 and not as one of $2500. No evidence whatever was introduced at the trial from or on behalf of any of the respondents in any wise contradicting or throwing doubt

upon the correctness of the indorsements on the back of the note. Under these circumstances our finding is, as above noted, in favor of the complainant upon this question. The contention that the admissions of Mrs. Nakuina, consisting of her acquiescence in the accounts as rendered, in her failure to object to them and in her statements in the letter to A. L. Castle, are not binding upon the minor respondents cannot be sustained. The additional indebtedness of $500 was created on January 24, 1907, during the lifetime of all of the original makers of the note and the mortgage. It became a debt binding not only upon the original borrowers but also upon their property after their death. After the death of Fredericka W. K. Beckley, the guardian of her five minor heirs, now respondents, was justified in assenting to the application of the proceeds of the sale of the land of the deceased ancestor to the payment of the debt, either secured or unsecured. The application cannot now be successfully disputed. It is immaterial, therefore, whether the parties concerned intended to make the $500 an additional charge upon the mortgaged property or merely treated it, with the indebtedness of $8500, as one running account, with the smaller note unsecured by the mortgage. In either event the application of the payment of $6000 in part to the retirement of the $500 note must stand.

The contention concerning two alleged double payments is based upon the following four indorsements found on the back of the note:

| | | | | | | |
|---|---|---|---|---|---|---|
| May 30/97, | 6 mos. int. | paid | to | 5/30/97 | | 297.50 |
| Nov. 20/97, | 6 " " | " | to | 11/30/97 | | 297.50 |
| May 30/97, | 6 " " | " | to | 5/30/97 | | 297.50 |
| Dec. 31/97, | 6 " " | " | to | 11/30/97 | | 297.50 |

The third of these items is obviously a duplicated entry as distinguished from a duplicated payment. It is

scarcely to be supposed that on the same day two sep-
arate payments were made or intended to be charged
or credited. It seems probable also, from the shortness
of time elapsing from November 20, 1897, to December
31, 1897, that the fourth entry is a mere duplication of
the second without a double payment although the infer-
ence, from the face of these latter two entries alone, would
not be as strong as in the case of the other two entries
but any doubt on the subject is set at rest by the context
of the written agreement of August 1, 1902, referred
to above on another point. In that agreement it is pro-
vided that the mortgagors may at any time during the
period of three years sell a certain part of the mort-
gaged property and that the proceeds of such a sale
"may be paid over on account of the principal sum due
upon said mortgage," with the proviso that "if said sale
shall occur within one (1) year from the said 1st day
of August, 1902, interest shall be paid upon the entire
amount named in the said note for a full year from and
after the 1st day of August, 1902." In other words, all
parties to that agreement, including all of the original
makers of the note and the mortgage, were on August
1, 1902, satisfied that interest for the year beginning with
August 1, 1902, was still unpaid, which would not be
the fact if the items under consideration were double
payments as now contended by the respondents. So also,
the acquiescence of Mrs. Nakuina in the accounts as ren-
dered and her failure to object thereto confirm the view
that there were no duplications of payments. As guardian
of the property of the minor respondents, she was author-
ized to so acquiesce if she believed, as she evidently did,
that the accounts were correct. Again, the fact that all
of the interest credited on the back of the note was paid
solely out of rents collected by W. R. Castle from prop-
erty under the control of Emma M. Nakuina and that

these rents in the year 1897 and for at least five years thereafter did not exceed $760 per annum, strongly supports the view that the yearly interest of $595 was paid once only and not twice in the year 1897.

Our own calculations from the indorsements on the back of the note show that in three instances there were underpayments of interest aggregating $62.31 and that in one other instance there was an overpayment of $14.17 or a net underpayment of interest of $48.14. The trial court made no allowance for this net underpayment. In view of the fact, however, that the complainant is not appealing from the decree below and that the entries are numerous and the account long-existing, indicating possibly that there were reasons for the underpayments satisfactory to the mortgagee, no further notice will be taken of these minor discrepancies.

The decree appealed from, which awards to the complainant a balance of $3000 of principal together with interest thereon from March 4, 1918, at the rate of seven per cent. per annum, is affirmed.

*A. Withington* (*W. J. Robinson* and *Robertson & Castle* on the briefs) for complainant.

*E. J. Botts* (also on the briefs) for respondents.